1
2
3
4                  UNITED STATES DISTRICT COURT
5            FOR THE NORTHERN DISTRICT OF CALIFORNIA
6                        OAKLAND DIVISION
7
8    UNITED STATES OF AMERICA,           Case No:  CR 12-00607 SBA

         Plaintiff,                       **ORDER GRANTING**
9                                         **DEFENDANT'S MOTION**
                                          **TO SUPPRESS**
     vs.
10                                        Dkt. 33
     KEVIN EDWARD LANG,
11
         Defendant.
12

13          Defendant Kevin Edward Lang ("Defendant" or "Lang") is charged in a one-count

14   Indictment with a violation of 18 U.S.C. § 2252(a)(4)(B) – Possession of Child

15   Pornography.  The parties are presently before the Court on Defendant's Motion to

16   Suppress Evidence.  Defendant seeks to suppress evidence seized following the warrantless

17   search of his bedroom on May 18, 2011, as well as the results of a subsequent search of the

18   computer equipment seized from his room.  On January 14, 2015, the parties appeared for

19   oral argument on the motion.  Having read and considered the papers filed in connection

20   with this matter, and after considering the arguments made by counsel at the motion

21   hearing, the Court hereby GRANTS Defendant's motion to suppress, for the reasons stated

22   below.

23   I.     **BACKGROUND**

24          The starting point for the Court's review of Defendant's motion to suppress is the

25   validity of the initial search of his bedroom at his grandparent's house and the related

26   seizure of various computers and storage devices (collectively "Computer Equipment").

27   The Government contends that the initial warrantless search was permitted under the

28   conditions of Defendant's juvenile parole, or alternatively, as a result of Defendant's

grandfather's consent. In order to provide context to these issues, the Court first reviews the circumstances of Defendant's initial release from custody in 2007 and his related parole status, and then turns to the facts of his arrest and the subsequent search and seizure of his property.

## A. DEFENDANT'S CRIMINAL HISTORY

On July 24, 2006, Defendant suffered a juvenile adjudication for Sodomy of a Child by Means of Force, Violence, Duress, Menace or Fear of Immediate and Unlawful Bodily Injury in violation of California Penal Code § 286(c)(2). Gov. Opp'n, Ex. 4 at KEL00274, Dkt. 3-4. Defendant received a term of eight years and was committed to the custody of the California Youth Authority, now known as the Department of Corrections and Rehabilitation—Division of Juvenile Justice ("DJJ"). Id. Maximum Custody (also referred to as "Actual Physical Confinement Time" or "ACT") was set at three years, with jurisdiction termination set at age twenty-five. Id.[1]

On August 27, 2007, the DJJ received notification that Defendant was entitled to 718 days of credit for time served. Lile-Delgado Decl. ¶ 2, Dkt. 40-1. This credit meant Defendant no longer had any ACT remaining, since he could be held in custody for a maximum of three years. Id.; Saldaña Decl. ¶ 5, Dkt. 33-3. As a result, on September 14, 2007, Defendant was released from the N.A. Chaderjian Youth Correctional Facility and placed on parole. Lile-Delgado Decl. ¶ 2. At the time of his release on September 14, 2007, Defendant had exceeded his ACT by thirty-nine days. Gov. Ex. 4 at KEL000271.

The California regulations then in effect specified that the conditions of juvenile parole are to be established by the Juvenile Parole Board "at the time parole is granted." Cal. Code Regs., tit. 15, § 4929(a)(6) (1988); see Saldaña Decl. ¶ 5. That did not transpire in Defendant's case. Because Defendant had exceeded his maximum ACT, he was released

---

[1] Given that term, Defendant could remain on parole and under the jurisdiction of the DJJ until June 30, 2013. Id.; see Cal. Welf. & Inst. Code § 731(b) (2003); Cal. Welf. & Inst. Code § 1769(b) (1994); Cal. Welf. & Inst. Code § 707(b) (2000).

immediately without a hearing before the Juvenile Parole Board, and without receiving conditions of parole. Saldaña Decl. ¶ 5; Gov. Ex. 4 at KEL00263.

Immediately following his release, Defendant reported to the Oakland Juvenile Parole Unit and met with his assigned parole agent, Claudia Lile-Delgado ("Lile-Delgado"). Lile-Delgado ¶¶ 1, 3. According to Lile-Delgado, she reviewed with Defendant the putative conditions of his parole, "including the condition that his person, home, property, and car" were subject to search "without a warrant and without probable cause." Id. ¶ 3.[2] Moreover, Lile-Delgado states that one of her responsibilities and standard practices in meeting with parolees is to have them sign a Notice of Parole Conditions form, which she then places in the juvenile's file. In the case of Defendant, however, she has no independent recollection whether he signed that form and no record of such form is in Defendant's master file. Id.; Saldana Decl. ¶ 4. For his part, Defendant maintains that he was never told that he was subject to a parole search condition, and did not sign any such acknowledgement of, or consent to, a parole search condition. Lang Decl. ¶ 2, Dkt. 39-1.

Due to the suddenness of his release from custody, no parole placement plan was prepared for Defendant. Lile-Delgado Decl. ¶ 4. As such, Defendant was initially placed at the Lakehurst Hotel in Oakland, where he resided from September 2007 through May 2008. Id. ¶¶ 4-5. In April 2008, Lile-Delgado conducted a parole search of Defendant's room and seized four to eight computer hard drives. The search was prompted by a call from a confidential informant, who claimed that Defendant was allegedly on "100 different websites soliciting himself for sex." Id. ¶ 6; Gov. Opp'n Ex. 4 at KEL00320. The seized items were turned over to the Oakland Police Department. Lile-Delgado Decl. ¶ 6.

---

[2] Lile-Delgado misstates the applicable parole conditions, which then stated that: "You and your residence and any property under your control may be searched without a warrant by a parole agent of the Department of the Youth Authority, parole agent of the Youthful Offender Parole Board, or any peace officer." 15 Cal. Code Regs § 4929(a)(6) (1988). Despite Lile-Delgado's intimations to the contrary, there was, at that time, no reference to a search without "probable cause." In 2012, however, this section was amended and renumbered, and now provides that a parolee "may be searched with or without a warrant and with or without probable cause . . . ." Id. § 4929(a)(5) (2012).

- 3 -

In May 2008, Erik Valeriano ("Valeriano") was assigned to supervise Defendant. Valeriano Decl. ¶ 2, Dkt. 37-3. According to Valeriano, he met with Defendant, and, consistent with his standard practice, reviewed with him the conditions of his parole, including the condition that his person, home, property, and car were subject to a search by any law enforcement officer "without a warrant and without probable cause." Id. ¶ 4. Valeriano has no independent recollection whether Defendant's file contained a notice of parole conditions signed by Defendant, but states that, if such form were missing, his practice is to have the juvenile parolee sign a the form and place it in the parolee's file.[3]

On July 8, 2008, Valeriano and Detective Salida of the Oakland Police Department made arrangements for Defendant to report to the Oakland Police Department ("OPD"), at which time he was to be arrested (for reasons not articulated in the record). Gov. Opp'n Ex. 4 at KEL00320. However, Defendant did not appear for his appointment. Id. Later that evening, Defendant left the group home where he had been staying. Id. at KEL00321.

## B. TRAFFIC STOP AND ARREST IN MAY 2011

On May 18, 2011, Defendant was riding as a passenger in a vehicle driven by his grandmother, Linda Morris ("Grandmother"). On that date, Deputy Eric Hofstein of the Contra Costa Sheriff's Office ("Deputy Hofstein") effected a traffic stop after observing the Grandmother's vehicle drift across several lanes without signaling. Hofstein Decl. ¶ 1, Dkt. 37-1. Deputy Hofstein approached the vehicle from the passenger side of the vehicle to address its occupants, including Defendant, who was seated in the front passenger seat. Id. Deputy Hofstein noticed that Defendant was "acting nervous and not making eye contact." Hofstein Decl. Ex. 1.1 at KEL0004. When Deputy Hofstein asked whether he was on probation or parole, Defendant hesitated slightly and responded "no." Id. Defendant produced a Florida identification card per Deputy Hofstein's request. Id.

_____

[3] The exemplar of a Notice of Parole Conditions form that Valeriano claims he would have placed in a parolee's file appears to be a version which took effect *after* Defendant was released. Id. Ex. 3.1. In addition, like Lile-Delgado, the conditions of parole that Valeriano claims to have communicated to Defendant, id. ¶ 4, is based on a version of § 4929 that had not yet been promulgated.

Deputy Hofstein conducted a records check on Defendant which revealed that he had "a pending 290PC [i.e., referring to California's Sex Offender Registration Act] case from Oakland PD," and was possibly a fugitive. Id. The records check also revealed that Defendant was on "active CYA parole until 2013," and that Defendant had failed to register as a sex offender since June 28, 2008. Id. Deputy Hofstein contacted the Oakland Police Department and received confirmation that Defendant was not in compliance with his obligation to register as a sex offender. Id. Deputy Hofstein directed Defendant to exit the vehicle, placed him in handcuffs and conducted a pat-down search for weapons. Id.

In response to questioning about his living situation, Defendant told Deputy Hofstein that he was a resident of Florida and visiting California for two weeks to "clear some personal matters." Id. Defendant stated that he had advised the State of Florida of his "registration status," but that Florida did not require him to register there. Id. Defendant also insisted that he did not lie about being on parole because his parole was "jurisdictional," meaning that he could "say his parole was over." Id. at KEL00005.

Deputy Hofstein then spoke with the Grandmother outside of the presence of Defendant. Id. During their conversation, the Grandmother informed Deputy Hofstein that she was Defendant's grandmother and that he had been living with her and her husband at 153 Scenic Court, Concord, California, since February 2009. Id. The Grandmother also informed Deputy Hofstein that Defendant had his own room, and that he provides her with physical assistance and "sometimes provides money." Id. She told Deputy Hofstein that Defendant did "odd computer jobs" for money, and that he has "lots of computers and computer parts in his room." Id.

After speaking with the Grandmother, Deputy Hofstein confronted Defendant and accused him of lying and obstructing the investigation. Id. Defendant, looked down, appeared to cry, and admitted that he had been living in California for the last two years. Id. Deputy Hofstein read Defendant his Miranda rights. Id. Thereafter, Deputy Hofstein and another officer drove Defendant to his grandparents' house "to conduct a parole search of his room." Id.

### C.    SEARCH OF DEFENDANT'S BEDROOM

Upon arriving at Defendant's grandparents' residence, Deputy Hofstein made contact with Defendant's grandfather, Jay Morris ("Grandfather").  Id.  According to Deputy Hofstein, "Jay [i.e., the Grandfather] gave me consent to enter the home and showed me the room where Lang lives in."  Id. at KEL00005; Hofstein Decl. ¶ 3. Defendant claims that his bedroom was his own "private space" which his grandparents understood they were not to enter without his permission.  Lang Decl. ¶ 3, Dkt. 39-1. Though Defendant was present outside the house, Deputy Hofstein did not ask him for consent to search his bedroom.  Id.[4]

Deputy Hofstein, along with Deputy Besag and Sgt. Douglas, entered Defendant's bedroom "without the use of a key."  Id. Ex. 1.1 at KEL00005.  During the search, the officers seized nine computer hard drives, three tower-style desktop computers, five laptop computers, and a box of memory cards.  Id.  Defendant, who remained outside during the search, acknowledged that the bedroom was his and that he had lived there for the past two years.  Id.  Defendant stated that there was nothing illegal in his computers, though Deputy Hofstein claims that Defendant "spontaneously" asked him if a "forensics team" would be examining them.  Id.  In response, Deputy Hofstein asked Defendant whether there was any illegal pornographic material on his Computer Equipment.  Id.  Defendant responded that there was no such material that he was "aware of."  Id.

Following the search of Defendant's bedroom and the seizure of the various items located therein, Defendant was transported to the county jail where he was booked for failing to comply with annual "290 PC registration," and for failing to provide an updated address "as a 290 PC registrant."  Id.  On June 28, 2011, while in custody, Defendant was

---

[4] Deputy Hofstein's statements regarding the Grandfather's consent are somewhat inconsistent.  In his Police Report prepared on May 19, 2011, Deputy Hofstein states that "Jay gave me consent to enter the home and showed me the room Lang lives in."  Hofstein Decl. Ex. 1.1 at KEL0005.  He does not state that the Grandfather gave him consent to enter Defendant's room.  But in his declaration prepared over three years later, Deputy Hofstein now claims that the Grandfather "gave me consent to search his grandson's room."  Hofstein Decl. ¶ 3(b).

sent a notice of a discharge review hearing scheduled by the Juvenile Parole Board.  Gov. Ex. 4 at KEL00301, KEL00304.  The discharge report prepared by the Supervising Parole Officer states:  "The Oakland Parole Office recommends a dishonorable discharge since our ability to modify his behavior is limited by zero ACT, his avoidance of supervision and lack of willingness to utilize resources offered by DJJ parole."  Id. at KEL00303.  Defendant was dishonorably discharged from juvenile parole on July 27, 2011.  Id. at KEL00301.

On August 8, 2011, Defendant was convicted for failing to register as a sex offender and sentenced to 3 years of probation and 180 days of imprisonment.  Id. Ex. 5.  During the period of Defendant's incarceration, his Computer Equipment was stored at the Contra Costa County Sheriff's Office Property Room.  Id. at 8.  Defendant claims that he was never advised that he could reclaim his property or how to go about doing so.  Lang Decl. ¶ 4.

### D.    SEARCH OF DEFENDANT'S COMPUTER EQUIPMENT

On September 3, 2011, Defendant was released from custody, but failed to report to probation within five days of his release, as required.  Id. at 9.  On October 18, 2011, the Contra Costa County Sheriff's Department obtained a warrant to conduct a forensic search of the Computer Equipment and electronic storage devices seized from Defendant's bedroom.  Def.'s Ex. B (10/18/11 Search Warrant) at KEL00015, Dkt. 33-1.  The affidavit submitted in support of the search warrant application claimed that "Lang's Computer Equipment, now stored in Sheriff's Office Property, may contain vital information that could assist law enforcement in *locating* Lang."  Id.  On October 21, 2011, the Sheriff's Office sought and obtained a ninety-day extension beyond the initial ten-day time-period to complete the search authorized by the warrant.  Id. Ex. C (Addendum to Search Warrant) at KEL00017 (emphasis added), Dkt. 33-1.  The search was thus to be completed by January 26, 2012.

On December 2, 2011, the Sherriff's Office transmitted the seized items to the Federal Bureau of Investigation ("FBI") for the purpose of obtaining "[the FBI's]

assistance . . . in reviewing the evidence and seeking federal prosecution against [Defendant] for *possession of child pornography*."  Def.'s  Mot. Ex. D (6/04/12 FBI 302 Report) at KEL00018, Dkt. 33-1.  On June 1, 2012, FBI Special Agent Robert Basañez ("Special Agent Basañez") issued his report.  Id. Ex. E (3/28/12 FBI Report) at KEL00023. Dkt. 33-1.  The report indicates that on April 27, 2012, he forensically examined the Computer Equipment seized from Defendant's bedroom and found 7,093 child pornography images and 208 child pornography videos.  Id.  By the time Special Agent Basañez conducted his search, however, the time limit for executing the state search warrant had expired, and there is no evidence of any further extension having been sought or obtained.

On August 8, 2012, Defendant was arrested in the State of Washington after he sold a computer to a friend containing child pornography.  Pl.'s Ex. 5 (Aff. in Supp. of Fed. Search Warrant) at KEL00523, Dkt. 37-5.  In February 2013, Defendant was convicted of possessing depictions of minors engaged in sexually explicit conduct, in violation of Revised Code of Washington 9.68A.070(1)(B).  He was sentenced to sixty-one months in state prison.  Id. at KEL00524.

**E.    THE PRESENT CASE**

On August 9, 2012, the Government filed a one-count Indictment against Defendant, charging him with possession of child pornography.  Dkt. 1.[5]  Pursuant to a Petition for Writ of Habeas Corpus Ad Prosequendum filed by the Government, Defendant was transferred from Washington to federal custody and made his initial appearance in this Court on May 29, 2013.  Dkt. 2, 4.

On August 26, 2014, Defendant filed the instant motion to suppress seeking to suppress "all fruits of the unlawful seizure and search of his computers and electronic storage devices."  Mot. to Suppress at 1, Dkt. 33.  Defendant contends that the seizure and search violate his Fourth Amendment rights on the following grounds:  (1) the warrantless

---

[5] The Government filed its Indictment during the pendency of Defendant's case in Washington.

search of his bedroom and seizure of Computer Equipment on May 18, 2011 was legally unjustified; (2) there was no probable cause to justify the state court search warrant obtained on October 18, 2011; and (3) the FBI's search of the Computer Equipment in June 2012 was conducted without a warrant. Mot. at 2.

On September 15, 2014, in response to Defendant's motion to suppress, the Government filed an application in this Court for a warrant "to search Computer Equipment and electronic storage media seized on May 18, 2011, during a parole search of Kevin Lang's room at 153 Scenic Court, Concord, California." Gov. Ex. 5 at KEL000515. The application was supported by an affidavit signed by Special Agent Basañez. Id. at KEL00515-00530. On the same day, Magistrate Judge Donna Ryu ("the Magistrate") issued a search warrant authorizing a search of the seized items for visual depictions of minors engaging in sexually explicit conduct. Id. at KEL00505.

The day after filing the above search warrant application, the Government filed its opposition to the instant motion to suppress. Pl.'s Opp'n to Mot. at 1, Dkt. 37. In its response, the Government contends that: (1) Defendant was subject to a warrantless search of his person and property as a condition of his parole; (2) the Grandfather, as the homeowner, otherwise consented to the search; (3) the seizure of the Computer Equipment was permissible based on "Defendant's criminal history, fugitive parole status, failure to register as a sex offender, and suspicious behavior"; and (4) the search of the Computer Equipment was retroactively justified by the federal search warrant issued by the Magistrate. Id.[6]

---

[6] The Government previously argued that the search was justified under the state search warrant. At the hearing, Defendant pointed out that the state search warrant had expired by the time the FBI conducted its search. The Government agreed and indicated that it was no longer relying on the state search warrant to justify the search of the Computer Equipment. In addition, the Court notes that the state search warrant was limited to information regarding Defendant's location, and did not authorize a search for child pornography.

## II.    LEGAL STANDARD

The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S. Const. amend. IV.  Any evidence resulting from an unconstitutional search or seizure must be suppressed and cannot be admitted as proof against the victim of the search.  See Wong Sun v. United States, 371 U.S. 471, 485 (1963) (reciting "fruit of the poisonous tree" doctrine).  The Supreme Court has held that "the proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."  United States v. Caymen, 404 F.3d 1196, 1199 (9th Cir. 2005) (citing Rakas v. United States, 439 U.S. 128 (1978)).  Once a defendant establishes a basis for a suppression motion, the government must prove that the search or seizure was proper by a preponderance of the evidence.  United States v. Mendenhall, 446 U.S. 544, 557 (1980); see United States v. Scott, 705 F.3d 410, 416 (9th Cir. 2012) (The "burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government"); People v. Pearl, 172 Cal.App.4th 1280, 1284 (2009) (noting that the prosecution bears the "burden of establishing the warrantless searches were justified as valid parole searches").

## III.   DISCUSSION

### A.    SEARCH OF DEFENDANT'S BEDROOM

#### 1.    Parole Search Condition

The parties do not dispute that Defendant was released on parole after the DJJ realized that he had exceeded the maximum amount of time he could be held in custody as a juvenile.  Instead, they disagree whether, following his release, he was, in fact, subject to a search condition authorizing the search of his person, residence and property without a warrant.  According to the Government, a warrantless search condition "universally" is imposed as a general condition of parole for juveniles, and therefore, it was reasonable for Deputy Hofstein to assume that Defendant, as a parolee, was subject to a warrantless search.  See Gov. Opp'n at 8.  Defendant counters that when Defendant was hastily released from custody, he was placed on parole, but that no conditions were imposed by the

Juvenile Parole Board at the time of release, as required by the then-applicable California regulations.  See Def.'s Reply at 2-5.

As an initial matter, the Government's contention that all juvenile parolees are "universally" subject to a warrantless search condition is unsupported by the record and overlooks the critical distinctions between *juvenile* parole and *adult* parole.  Under California law, adult parolees are *automatically* subject to a mandatory condition that allows parole agents and other law enforcement officers to search parolees and their residences at any time without a warrant.  Cal. Pen. Code §§ 3067(a) & (b)(3); see also id. § 3060.5 (requiring the parole authority to revoke the parole of any eligible inmate who refuses to sign a parole agreement, which must include the mandatory parole search condition).[7]  "Warrantless, suspicionless searches are a vital part of effective parole supervision . . . and are *mandated* in California as a condition of every parolee's release." People v. Schmitz, 55 Cal.4th 909, 924 (2012) (citation omitted, emphasis added).  Given the mandatory nature of this particular parole condition, an adult parolee may be searched without a warrant by a parole or peace officer "at any time" and without any suspicion, except for purposes of harassment, because he "d[oes] not have an expectation of privacy that society would recognize as legitimate."  Samson v. California, 547 U.S. 843, 852 (2006).

The rules governing juvenile parole are not statutory, but instead are set forth in regulations promulgated by the California Department of Corrections and Rehabilitation. Unlike the statutory provisions governing adult parole, there was, at the time of Defendant's release, no corresponding mandate that a juvenile parolee agree to a warrantless search condition as a prerequisite to his or her release on parole.  Rather, the regulations in effect at the time of Defendant's release in September 2007 specified as follows:

---

[7] Both California Penal Code sections 3067 and 3060.5 were amended in 2012, though not in any substantive manner pertinent to the instant motion.

> The [Juvenile Parole] Board *shall* set conditions of parole *at the time parole is granted*. Conditions of parole may be added or deleted during the time [the] ward is on parole.
>
> (a) General Conditions of Parole. The following are general conditions of parole:
>
> . . . .
>
> (6) You and your residence and any property under your control may be searched without a warrant by a parole agent of the Department of Youth Authority, parole agent of the Youth Offender Parole Board, or any peace officer.
>
> . . . .
>
> (b) Special Conditions of Parole. The Board may prescribe special conditions based on the individual ward's offense history, commitment offense or documented behavior.

Cal.Code Regs., tit. 15, § 4929(a)(6) (1988) (emphasis and footnote added); see also Cal. Wel. & Inst. Code § 1723(a) ("Every order granting or revoking parole . . . shall be made by the board or its designee, as authorized by this article.").

In the instant case, the Government offers no evidence that a warrantless search condition was actually imposed by the Juvenile Parole Board "at the time parole [was] granted" to Defendant. Cal.Code Regs., tit. 15, § 4929(a)(6) (1988). To comport with § 4929, prospective parolees typically appear before the Juvenile Parole Board prior to their release and sign off on their parole conditions at that time. Saldana Decl. ¶ 6. That procedure was not followed in this case. Upon realizing that Defendant had reached, and, in fact, exceeded the maximum amount of time he could be held in custody as a juvenile, the DJJ ordered his immediate release without directing Defendant to first appear before the Juvenile Parole Board. Id. ¶ 5; Lile-Delgado Decl. ¶ 2. Because of this, the Juvenile Parole Board never imposed any conditions of parole, as evidenced by the fact that no record of any imposed conditions has ever been found in Defendant's file. Saldana Decl. ¶ 4.

The Government glosses over the fact that no warrantless search condition was imposed on Defendant in accordance with § 4929, but insists that imposition of that condition is automatic. To support that contention, the Government claims that upon his release, Defendant met with his parole officer who informed him that he was subject to various parole conditions, "including the condition that his person, home, property and car

were subject to a search by any law enforcement officer without a warrant and without probable cause." Lile-Delgado Decl. ¶ 3; Gov. Opp'n at 9. With regard to the Government's first point, the notion that any parole condition is automatically imposed is, as noted, belied by the fact that the regulations explicitly state that the Juvenile Parole Board "shall" specify a juvenile's conditions of parole at the time parole is granted. 15 Cal. Code Regs., Tit. 15, § 4929.[8] The use of the term "shall" conveys that compliance with this provision is mandatory. <u>Martinez v. Board of Parole Hearings</u>, 183 Cal.App.4th 578, 589 (2010).

As for the Government's ancillary assertion, there is no verifiable evidence to substantiate the Government's assumption that Defendant was advised of the warrantless search condition at the time of his release. Defendant's initial probation officer, Lile-Delgado, claims she verbally reviewed with Defendant the conditions of his parole— "including the condition that his person, home, property and car were subject to search by any law enforcement officer without a warrant or probable cause," though Defendant claims she never discussed those conditions. <u>See</u> Lile-Delgado Decl. ¶ 3; Lang Decl. ¶ 2. Lile-Delgado has no independent recollection of having him sign a Notice of Parole Conditions form memorializing their discussion, and, in fact, no such form was found in Defendant's file. Lile-Delgado Decl. ¶ 3. Moreover, conditions she claims to have communicated to Defendant were not yet in effect. In any event, and importantly, the

---

[8] The Government's contention that a warrantless search condition is mandatory arguably would have been more compelling had the current version of § 4929 been in effect when Defendant was released in 2007. The version of § 4929 applicable in this case provides that, "*Conditions of parole* may be added or deleted during the time ward is on parole." Under the 2012 amendments, the regulation now reads that, "*Special conditions of parole* may be added or deleted as appropriate and deemed necessary by the Juvenile Parole Board during the time a parolee is on parole." 15 Cal. Code Regs., Tit. 15, § 4929 (2012) (emphasis added). The newly-added limitation that only *special* conditions may be added or deleted suggests that general conditions, including a search condition, are *now* mandatory. Similarly, unlike the prior version of § 4929, the regulation now instructs that: "You [i.e., juvenile parolees] must sign this agreement containing the conditions of parole or your parole will be rescinded/revoked." <u>Id.</u> § 4929(a)(16). This new requirement, which mirrors the statutes governing adult parole, <u>see</u> Cal. Pen. Code. §§ 3067(a) & (b)(3), also suggests that the general conditions of parole are considered prerequisites to parole, which was not the case previously.

Government has cited no authority establishing that the Juvenile Parole Board may delegate its obligation to establish and impose juvenile parole conditions to a parole officer.

Even if Defendant were validly subject to warrantless searches as a condition of his parole, the Government has not demonstrated that Deputy Hofstein or any of the law enforcement officers involved in the search had prior knowledge of Defendant's search condition. A "search condition validates a search only if the police had advance knowledge that the search condition applied before they conducted the search." United States v. Caseres, 533 F.3d 1064, 1076 (9th Cir. 2008) (citing Samson, 547 U.S. at 856 n.5); Moreno v. Baca, 431 F.3d 633, 641 (9th Cir. 2005) ("police officers cannot retroactively justify a suspicionless search and arrest on the basis of an after-the-fact discovery of . . . a parole condition."); In re Jaime P., 40 Cal.4th 128, 133 (2006) (applying same rule to juvenile probationers). In his Police Report, Deputy Hofstein states that a records check revealed that Defendant was a "missing person endangered" who was "on active CYA parole until 2013." Hofstein Decl. Ex. 1.1 at KEL0004. Absent, however, are any facts regarding whether Deputy Hofstein inquired or otherwise knew whether Defendant was subject to a warrantless search condition. Rather, Deputy Hofstein apparently assumed that he was in light of Defendant's juvenile parole status and proceeded on that assumption. Id. ¶ 3(a).

The Government cites no decisional authority to support the notion that the "advance knowledge" requirement may be satisfied based solely on the officer's awareness that an individual is on parole. Nonetheless, the Court is aware that there is some authority holding that when an officer knows that an adult individual is on parole, the officer needs no additional information that the person is subject to a search clause, since, under California Penal Code section 3067, "[a] search condition for every parolee is now expressly required by statute." People v. Middleton, 131 Cal.App.4th 732, 739 (2005). Consequently, knowing that a person is on adult parole is at least presumptive knowledge that the person is subject to such a condition. Id. As explained above, the same is not true where juvenile parolees are concerned. While it is possible that juvenile parolees may be subject to a search condition, the imposition of that condition is not automatic, as in the

case of adult parole.  Hence, knowledge that a suspect is a juvenile parolee is not synonymous with knowledge that the person is subject to a search condition.  Since there is no evidence in the record that Deputy Hofstein knew that Defendant's parole was subject to a warrantless search condition, the Court is unpersuaded by the Government's claim that the search of Defendant's bedroom was legal in the absence of a warrant.

### 2. Consent

#### a) Search

Alternatively, the Government contends that the search of Defendant's room was legally justified based on the consent of the Grandfather.  A third party may validly consent to the search of another's property if he or she has either actual or apparent authority to give consent.  United States v. Davis, 332 F.3d 1163, 1169 (9th Cir. 2003).   The Government contends that it has shown that the Grandfather had both forms of authority.

Actual authority may be shown in one of two ways:  (1) the third party had "shared use and joint access to or control over a searched area"; or (2) "the owner of the property to be searched has expressly authorized a third party to give consent to the search."  United States v. Arreguin, 735 F.3d 1168, 1174 (9th Cir. 2013) (internal quotations and citation omitted).  Here, there is no allegation or evidence that Defendant authorized his Grandfather to grant consent to search his bedroom.  Nor is there any showing that the Grandfather had shared use or joint access to or control over Defendant's room.  Rather, the Government relies on Deputy Hofstein's claim that the Grandfather answered the door to the home and confirmed Defendant lived there with him.  Hofstein Decl. ¶ 3(b).  But the mere fact that Defendant lived in the Grandfather's home, without more, is insufficient to show consent.  See United States v. Matlock, 415 U.S. 164, 171 n.7 (1974) ("Common authority is, of course, not to be implied from the mere property interest a third party has in the property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be

searched."); <u>United States v. Ruiz</u>, 428 F.3d 877, 880 (9th Cir. 2005) (declining to find actual authority to consent when the record was "sparse" as to whether the person who allegedly gave consent "had joint access to or control over" the area being searched).

Apparent authority is likewise lacking. A search premised on the apparent authority of a third party is only justified when the government "proves that the officers who conducted [the search] reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." <u>Arreguin</u>, 735 F.3d at 1175 (internal quotations omitted). "'Apparent authority is measured by an objective standard of reasonableness, and requires an examination of the actual consent as well as the surrounding circumstances.'" <u>Id.</u> (quoting <u>United States v. Ruiz</u>, 428 F.3d 877, 881 (9th Cir. 2005)). In assessing whether an officer's belief was objectively reasonable, the court considers "the facts available to the officer at the moment." <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 188 (1990) (internal quotation marks omitted).

Based on the record presented, the Court is unpersuaded by the Government's assertion that Deputy Hofstein could have reasonably believed that the Grandfather had actual authority to grant consent. The Government claims that Deputy Hofstein thought that the Grandfather was "the head of the household" and therefore had the authority to consent to the search of Defendant's bedroom. Whether Deputy Hofstein assumed that the Grandfather was the "head of the household" and had access to Defendant's bedroom is inapposite for purposes of consent. "Ninth Circuit law provides that the 'mere fact of' a third party's access to an area, 'without more, does not indicate that the access was authorized' and that the third party had authority to consent to a search of the area." <u>Arreguin</u>, 735 F.3d at 1175. In sum, the Court is unpersuaded that the Grandfather was vested with actual or apparent authority to grant consent to Deputy Hofstein to search Defendant's bedroom.

### b) *Seizure*

Irrespective of whether the Grandfather had actual or apparent authority to consent to the search of Defendant's room, the Government has not shown that the seizure of

Defendant's Computer Equipment was legally justified. According to the Government, the officers had *reasonable suspicion* to believe that evidence of criminal activity would be located on [the Computer Equipment]." Gov. Opp'n at 11 (emphasis added). Such suspicion is predicated upon Deputy Hofstein's knowledge that Defendant was a paroled sex offender, acted suspiciously during the traffic stop and had failed to register for three years. Id.

As an initial matter, the proper standard for a seizure is probable cause, not reasonable suspicion. See United States v. Place, 462 U.S. 696, 701 (1983) ("[A] seizure of personal property [is] *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon *probable cause* . . . .") (emphasis added); accord United States v. Drake, 543 F.3d 1080, 1087 (9th Cir. 2008) ("police seizures must be supported by probable cause").[9] "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the [Supreme] Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." Place, 462 U.S. at 701. "The burden is on the Government to persuade the district court that a seizure comes 'under one of a few specifically established exceptions to the warrant requirement.'" United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001) (citing United States v. Huguez-Ibarra, 954 F.2d 546, 551 (9th Cir. 1992)).

Here, the Government has failed to demonstrate that Deputy Hofstein had *any* legally cognizable grounds for seizing the Computer Equipment. Neither Deputy Hofstein's recently-prepared declaration nor police report states that he decided to seize

---

[9] The Government's reliance on United States v. Lozano, 623 F.3d 1055 (9th Cir. 2010) is misplaced. The issue in that case was whether "the postal inspector lacked reasonable suspicion to detain the package past its delivery time and that the detention of the package was unreasonable." Id. at 1060. Lozano does not address the salient issue presented here, which is the legal standard to seize personal property in connection with a lawful search.

Defendant's property based on his parolee and sex offender status or his nervous behavior. Nor are there any facts in the record to support a finding that exigent circumstances or any recognized exception to the warrant requirement, such as the plain view doctrine, were present to justify the seizure.[10]  Despite the Government's intimations to the contrary, the fact that Defendant had previously suffered a juvenile adjudication for a sex offense does not, without more, supply the requisite probable cause to seize his computers and search for child pornography.  See United States v. Needham, 718 F.3d 1190, 1194-1195, n.3 (9th Cir. 2013) (noting that four circuits have held that "evidence of child molestation does not by itself amount to probable cause that the suspect possesses child pornography"); see also Dougherty v. City of Covina, 654 F.3d 892, 899 (9th Cir. 2011) (holding that affiant's conclusory allegation that the defendant molested two children did not establish probable cause to search for child pornography on a home computer).

### 3.    Conclusion

The Court finds that the Government has failed to meet its burden of establishing the validity of the warrantless search of Defendant's bedroom and resulting seizure of his Computer Equipment.  At the time of Defendant's initial release from custody in 2007, the general conditions of juvenile parole—including a warrantless search provision—were neither mandatory nor automatic.  The Juvenile Parole Board was required establish any conditions of juvenile parole at the time of the juvenile's release, which, in this instance, never occurred.  In addition, the conditions that Defendant's parole officers allegedly conveyed to him verbally were not yet in existence.  The Government has also failed to demonstrate that the Grandfather had actual or apparent authority to consent to the search of Defendant's room.

---

[10] "[T]he 'plain view' doctrine does not apply unless the initial entry is lawful, either pursuant to a warrant or under a recognized exception to the warrant requirement." Arreguin, 735 F.3d at 1179.

### B.   SEARCH OF DEFENDANT'S COMPUTER EQUIPMENT

As an alternative matter, the Government contends that, irrespective of the legality of the search of Defendant's bedroom, the search of Defendant's Computer is nonetheless justified for two reasons:  (1) Defendant "abandoned" his property by not seeking to reclaim it; and (2) a Magistrate Judge of this Court issued search warrant authorizing the search.

### 1.   Abandoned Property

Abandoned property is not subject to Fourth Amendment protection.  United States v. Wilson, 472 F.2d 901, 902 (9th Cir. 1972).  The inquiry into abandonment is a "question of intent."  United States v. Nordling, 804 F.2d 1466, 1469 (9th Cir.1986).  This inquiry "focus[es] on whether, through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure."  Id.  "This determination is to be made in light of the totality of circumstances, and two important factors are denial of ownership and physical relinquishment of the property."  Id.

As an initial matter, the Government's abandonment theory fails on the ground that the seizure of the Computer Equipment resulted from an unlawful search.  United States v. Garzon, 119 F.3d 1446, 1451 (10th Cir. 1997) ("Abandonment will not be recognized when it is the result of prior illegal police conduct.").  That aside, the totality of circumstances do not support the conclusion that Defendant relinquished his expectation of privacy in his Computer Equipment.  First, there is no evidence that Defendant ever denied ownership of seized items or that he voluntarily relinquished them.  See Nordling, 842 F.2d at 1469. There also is no showing that Defendant knew that he could have retrieved the seized items after his release from custody, but *intentionally* chose not to do so.  Indeed, according to Defendant, he was never told that he could reclaim his property upon his release from custody or how to go about doing so.  Lang Decl. ¶ 4.  But even if he were so informed, the fact that he did not retrieve his property does not establish abandonment.  See United States v. Lopez-Cruz, 730 F.3d 803, 808 (9th Cir. 2003).

The two cases cited by the Government are readily distinguishable. Both cases involved the seizure of items that had been intentionally discarded in the trash. See Abel, 362 U.S. at 241 (finding nothing unlawful about warrantless seizure of abandoned property found in hotel wastepaper basket after petitioner paid his bill and vacated the room); United States v. Bowman, 215 F.3d 951, 963 (9th Cir. 2000) ("Bowman's claim that this violated the Fourth Amendment lacks merit, as the case he cites to show he has a legitimate expectation of privacy in his garbage . . . comes out the other way"). In this case, Defendant did not relinquish his expectation of privacy by discarding his Computer Equipment. Rather, the Computer Equipment was involuntarily and unlawfully taken from him by the law enforcement officials who conducted the search of his bedroom. As such, the rationale for construing garbage as "abandoned" for Fourth Amendment purposes has no application here.

## 2. Federal Search Warrant

Finally, the Government attempts to retroactively justify the search of Defendant's Computer Equipment based upon the federal search warrant issued by the Magistrate *after* Defendant filed the instant motion to suppress. Gov. Opp'n at 12-13. According to the Government, the federal search warrant application purposefully omitted any facts regarding the prior search of the Computer Equipment, and independently provided the Magistrate with sufficient information to establish probable cause to justify issuance of the search warrant.[11] Because it asserts that the warrant ostensibly does not rely on any tainted

[11] Although Special Agent Basañez did not mention the results of the FBI's search of the Computer Equipment in his affidavit and requested that "this Court not consider the search and accompanying circumstances in reviewing this search warrant application," he provided extensive details of the search. Gov. Ex. 5 at KEL000522-23. Among other things, he noted that Defendant was subject to a warrantless search as a condition of his parole, that the Grandfather "gave officers permission to search [Defendant]'s room, and that in the room the officers found "indicia" consisting of the Computer Equipment. Id. The affidavit also recites that, while his room was being searched, Defendant asked whether a "forensics team would be examining his computers" and denied that there was "illegal pornographic material on the computers." Id. The fact that the FBI forensically examined the computers pursuant to a state court search warrant is also discussed. Special Agent Basañez's request that "this Court not consider the search and accompanying circumstances in reviewing this search warrant application," actually draws more attention to such information.

evidence, the Government contends that the search of the Computer Equipment is permissible under the independent source doctrine.

The independent source doctrine is an exception to the exclusionary rule that "allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." <u>Nix v. Williams</u>, 467 U.S. 431, 443 (1984). As such, the inclusion of tainted evidence in a search warrant affidavit does not necessarily invalidate the warrant or taint the evidence seized under that warrant. <u>United States v. Heckenkamp</u>, 482 F.3d 1142, 1149 (9th Cir. 2007). "In order to determine whether evidence obtained through a tainted warrant is admissible, '[a] reviewing court should excise the tainted evidence and determine whether the remaining untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.'" <u>Id.</u> (alterations in original, citation omitted).

At the motion hearing, the Court asked the Government to identify the untainted facts in the search warrant affidavit that establish probable cause. The Government did not respond directly to this question, but instead conceded that if the Court concludes that the initial search of the bedroom was neither a proper parole nor consent search, the federal warrant would not validate the search of the Computer Equipment conducted by the FBI. As discussed, the Court has concluded that the initial warrantless search of Defendant's bedroom was unlawful. In view of that determination, coupled with the Government's concession, the Court need not delve further into the issue of whether the search warrant issued by the Magistrate retroactively validates the search of the Computer Equipment conducted by the FBI.

## IV.     CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.     Defendant's motion to suppress is GRANTED.

2.     This Order terminates Docket 33.

//

IT IS SO ORDERED.

Dated: 3/6/15

SAUNDRA BROWN ARMSTRONG
United States District Judge